## SHAW v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7170.

Circuit Court of Appeals, Seventh Circuit.

Jan. 29, 1941.

E. G. Ince and Robert McDougal, Jr., both of Chicago, Ill., for petitioner.

J. P. Wenchel, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen., for respondent.

Before EVANS, TREANOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

Petitioner asks that a loss of $9,027, which he suffered in the year 1935, be treated as a bad debt in determining his income tax for that year. Respondent argues that the loss was a "capital loss," not a "bad debt," and should be deducted from petitioner's income as the statute prescribes in the case of a capital loss. The Board of Tax Appeals sustained the Commissioner and found, against petitioner's rather persuasive argument, that his loss was a "capital loss" and not a bad debt loss. His income tax was determined on that basis.

The Facts. Petitioner invested $18,000 in Cameron Water Improvement District bonds, which, in 1935, he had held for more than five, and less than ten, years. The Cameron Water Improvement District was a Texas public corporation which issued $600,000 of interest bearing bonds. The original bond issue was for the purpose of purchasing the irrigation district consisting of drains, ditches, etc., with various easements, rights of way, liens, etc. The aforesaid bonds constituted the sole funded debt of the district.

The District is located in the extreme southeastern part of Texas where there is no large city, and the population is almost entirely rural and agricultural. It was "hard hit" by the depression of 1929-33, and the District was unable to enforce the collection of taxes. Tax defaults multiplied, and the District was unable to make principal and interest payment due in September, 1933. The price of the bonds declined greatly. In 1933, the District applied to the R. F. C. for assistance, and the R. F. C. agreed to make a loan of $263,-505, to the District for the purpose of scal-

ing down its indebtedness from $525,000 and interest. A condition precedent to the making of such loan was the consummation of an agreement between the District and the holders of 90% or more of the outstanding bonds, whereby such holders agreed to accept 49.8% of their bonds, and to assign them to a party which in turn would use them to secure the money advanced by the R. F. C.

Pursuant to this proposal, the bondholders were solicited, and the requisite percentage of them consented to assign their bonds and accept 49.8% for them, and the R. F. C. made its payment to the bank which in turn paid to the bondholders, including petitioner, the sum due them under said agreement. Petitioner received $8,-973, and his loss was $9,027. This entire loss, he deducted from his income in his 1935 return.

Section 117(f), inserted in the Act of 1934, 26 U.S.C.A. Int.Rev.Code § 117(f), provides:

"For the purposes of this [title] chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation * * * shall be considered as amounts received in exchange therefor."

Section 23, 26 U.S.C.A. Int.Rev.Acts, pages 671, 673, provides that:

"In computing net income there shall be allowed as deductions: * * * (j) *Capital Losses.*—Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117(d)."

 Since this appeal was argued, the Supreme Court has decided two cases, McClain v. Commissioner (Commissioner v. Thomson), 61 S.Ct. 373, 375, 85 L.Ed. ——, both of which were announced, January 6, 1941. These two cases involved the manner in which losses sustained upon the cancellation of bonds for partial cash payments, should be treated. The Court held them to be capital losses, not bad debts. We have no alternative but to follow the holdings of these cases.

While the facts in the instant case differ in one respect from the facts in those cases, namely, the instant bonds were not retired or cancelled, but reused as a pledge, we believe the decisions referred to have important and controlling effect upon our case.

Speaking of the word "retirement" used in this tax statute, the court said:

" 'Retirement' aptly describes what occurred in the instant cases. The statute does not use the word in an unusual or artificial sense. In common understanding and according to dictionary definition *the word 'retirement' is broader in scope than 'redemption';* is not, as contended, synonymous with the latter, but includes it. Nothing in the legislative history of the provision requires us to attribute to the term used a meaning narrower than its accepted meaning in common speech."

As far as petitioner was concerned, these bonds were retired. He had surrendered them for half payment. The company in effect retired them and reissued them to effect the pledge. The real effect for tax purposes on petitioner was the crystallization of a capital loss.

The order of the Board of Tax Appeals is affirmed.